**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| Robert C. Camp, | ) | Bankruptcy No. 13-01028 |
| | ) | |
| | ) | Judge: Hon. Donald R. Cassling |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| McCann Industries, Inc., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. |
| | ) | |
| Robert C. Camp, | ) | |
| | ) | |
| Defendant. | ) | |

**Complaint to Determine Dischargeability of Debt
Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and §523(a)(6)**

Comes now the Plaintiff McCann Industries, Inc. ("McCann"), by counsel and pursuant to 11 U.S.C. §523(a)(2)(A) and Rule 7001 of the Federal Rules of Bankruptcy Procedure for its Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(6) states as follows:

**I. Parties**

1. The Plaintiff is an Illinois corporation doing business at 543 South Rohlwing Road, Addison, IL 60101.

2. The Defendant is an individual residing at 1600 Heather Lane, Darien, IL 60561 who filed for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code on January 10, 2013 ("the Petition Date").

3. The original deadline within which to timely file complaints to determine the dischargeability of debts in this bankruptcy case was April 16, 2013. McCann timely filed a Motion to Extend Time to Object to Discharge Under §727 and to Object to Dischargeability of Debt Under §523 ("the Motion") and was granted until June 16, 2013 to file its complaint pursuant to §727 and/or §523. McCann timely filed its Second Motion to Extend Time to Object to Discharge Under §727 and to Object to Dischargeability of Debt Under §523 and was granted until August 14, 2013 to file its complaint pursuant to §727 and/or §523. McCann timely filed its Third Motion to Extend Time to Object to Discharge Under §727 and to Object to Dischargeability of Debt Under §523 and was granted until September 14, 2013 to file its complaint pursuant to §727 and/or §523. McCann timely filed its Fourth Motion to Extend Time to Object to Discharge Under §727 and to Object to Dischargeability of Debt Under §523 and was granted until October 31, 2013 to file its complaint pursuant to §727 and/or §523.

## II. Jurisdiction And Venue

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. 157 and 1334.
5. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. 1409.
6. This adversary proceeding is a core proceeding under 28 U.S.C. 157(b)(2).

## III. Factual Allegations

7. At all relevant times, the Debtor, Robert C. Camp was President, Secretary and sole shareholder of Camp Flooring & Concrete Coatings, Inc. ("Camp Flooring"), an Illinois corporation incorporated on April 2, 1997 and involuntarily dissolved on September 14, 2012.

8. On or about August 26, 2008, the Debtor executed an Application For Credit and Agreement as to Credit Terms ("the Credit Agreement") with McCann on behalf of Camp Flooring. On or about August 26, 2008 the Debtor executed a Personal Guaranty in favor of McCann guaranteeing any Camp Flooring indebtedness greater than $150,000.00. Attached hereto as *Exhibit A* is a copy of the Credit Agreement and Personal Guaranty.

9. Pursuant to the Credit Agreement, McCann provided various industrial equipment and/or materials to Camp Flooring to be used in the project known as the Trump International Hotel and Tower in Chicago ("the Trump Tower Project"). The general contractor for the Trump Tower Project was James C. McHugh Construction Co. ("McHugh"). McHugh contracted with Camp Flooring on July 23, 2008 for Camp Flooring to furnish all material, equipment, labor and supervision required to complete the underlayment work for the Trump Tower Project building to be constructed and improved and in particular the underlayment work on floors 51 through 89 under which Camp Flooring was to provide "final floor slab levelness and flatness….no greater than 1/8" every 10'-0" with an original sub-contract price of $1,050,000.00. A true and accurate copy of the July 23, 2008 Subcontract Agreement is attached hereto and incorporated herein as *Exhibit B*.

10. During the time period August, 2008 through October, 2009, Plaintiff did provide materials to Camp Flooring which were accepted by Camp Flooring and used in the construction of the Trump Tower Project.

11. Beginning in September, 2008, Plaintiff did send monthly statements to Camp Flooring showing the account balance due from Camp Flooring during the time period August, 2008 through October, 2009. The Credit Agreement provided that Camp Flooring was to

pay any outstanding balance shown on the monthly statement within 30 days of the invoice date. Attached hereto as ***Exhibit C*** is a copy of the October 20, 2009 Statement of Account ("Statement of Account") sent by McCann to Camp Flooring showing a balance due of $412,851.42. Camp Flooring failed to pay the account balance due to McCann within 30 days of the invoice date.

12. As per Camp Flooring's contract with McHugh, in order for Camp Flooring to be paid for materials and labor provided for the Trump Tower Project, Camp Flooring, by and through the Debtor, was required to submit to McHugh a Waiver of Lien to Date and Contractor's Affidavit ("Waiver of Lien") which were required to contain:

   a) the amount of payment requested;

   b) the total amount of the contract plus extras;

   c) the names of all parties who have furnished materials or labor;

   d) all parties having contracts or subcontracts for specific portions of said work or materials; and

   e) the amount due or to become due to each such party.

13. As per the Statement of Account, as of September 12, 2008, Plaintiff had supplied $27,955.67 in materials to Camp Flooring for use in the Trump Tower Project and such amount remained unpaid as of September 12, 2008. On September 22, 2008 Patricia Wright, Assistant Credit Manager for Plaintiff provided a Waiver of Lien – Partial Materials or Labor (Illinois) to Camp Flooring as to $67,428.90 of materials provided to Camp Flooring. Attached hereto as ***Exhibit D*** is a copy of the September 22, 2008 Waiver of Lien – Partial Materials or Labor (Illinois), ("9/22/08 Partial Waiver").

14. On September 12, 2008, the Defendant executed and submitted a Waiver of Lien to McHugh requesting payment of $76,410.90 and stating that the total amount of the July 23, 2008 Subcontract Agreement, including extras was $1,050,000.00. The September 12, 2008 Waiver of Lien also stated that all materials used to generate the $76,410.90 billing were taken from Camp Flooring's fully paid stock and that McCann was Camp Flooring's principal supplier. Attached hereto as **Exhibit E** and incorporated herein is a copy of the September 12, 2008 Waiver of Lien. Camp Flooring received $76,410.90 from McHugh on or about September 12, 2008. McCann did not receive any funds from Camp Flooring on the September 12, 2008 Waiver of Lien payment.

15. As per the Statement of Account, as of October 13, 2008, Plaintiff had supplied an additional $186,036.87 in materials to Camp Flooring for use in the Trump Tower Project and such amount remained unpaid as of October 13, 2013.

16. On October 13, 2008, the Defendant executed and submitted a Waiver of Lien to McHugh requesting payment of $144,341.10 and stating that the total amount of the July 23, 2008 Subcontract Agreement, including extras was $1,050,000.00. The October 13, 2008 Waiver of Lien also stated that all materials used to generate the $144,341.10 billing were taken from Camp Flooring's fully paid stock and that McCann was Camp Flooring's principal supplier. Attached hereto as **Exhibit F** and incorporated herein is a copy of the October 13, 2008 Waiver of Lien. Camp Flooring received $144,341.10 from McHugh on or about October 13, 2008. McCann only received $62,008.86 from Camp Flooring on October 14, 2008 from the October 13, 2008 Waiver of Lien payment.

17. As per the Statement of Account, as of October 15, 2008, Plaintiff had supplied an additional $517.10 in materials to Camp Flooring for use in the Trump Tower Project and such amount remained unpaid as of October 15, 2008.

18. On October 15, 2008, the Defendant executed and submitted a Waiver of Lien to McHugh requesting payment of $83,809.80 and stating that the total amount of the July 23, 2008 Subcontract Agreement, including extras was $1,050,000.00. The October 15, 2008 Waiver of Lien also stated that all materials used to generate the $83,809.80 billing were taken from Camp Flooring's fully paid stock and that McCann was Camp Flooring's principal supplier. Attached hereto as **Exhibit G** and incorporated herein is a copy of the October 15, 2008 Waiver of Lien. Camp Flooring received $83,809.80 from McHugh on or about October 15, 2008. McCann did not receive any funds from Camp Flooring from the October 15, 2008 Waiver of Lien payment.

19. As per the Statement of Account, as of November 14, 2008, Plaintiff had supplied an additional $211,799.12 in materials to Camp Flooring for use in the Trump Tower Project and such amount remained unpaid as of November 14, 2008.

20. On November 14, 2008, the Defendant executed and submitted a Waiver of Lien to McHugh requesting payment of $165,564.00 and stating that the total amount of the July 23, 2008 Subcontract Agreement, including extras was $1,050,000.00. The November 14, 2008 Waiver of Lien also stated that all materials used to generate the $165,564.00 billing were taken from Camp Flooring's fully paid stock and that McCann was Camp Flooring's principal supplier. Attached hereto as **Exhibit H** and incorporated herein is a copy of the November 14, 2008 Waiver of Lien. Camp Flooring received $165,564.00 from McHugh on or about November 14, 2008. McCann received $103,575.70 from

       Camp Flooring on November 19, 2008 from the November 14, 2008 Waiver of Lien payment.

21. As per the Statement of Account, as of December 15, 2008, Plaintiff had supplied an additional $53,406.80 in materials to Camp Flooring for use in the Trump Tower Project and such amount remained unpaid as of December 15, 2008.

22. On December 15, 2008, the Defendant executed and submitted a Waiver of Lien to McHugh requesting payment of $192,888.00 and stating that the total amount of the July 23, 2008 Subcontract Agreement, including extras was $1,050,000.00. The December 15, 2008 Waiver of Lien also stated that McCann was Camp Flooring's principal supplier. Attached hereto as ***Exhibit I*** and incorporated herein is a copy of the December 15, 2008 Waiver of Lien. Camp Flooring received $192,888.00 from McHugh on or about December 15, 2008. McCann only received $62.18 from Camp Flooring from the December 15, 2008 Waiver of Lien payment. McCann did receive two additional payments in December from Camp Flooring, $90,228.69 on December 22, 2008 and $48,127.86 on December 29, 2008. McCann does not know the source of the December 22, 2008 or December 29, 2008 payments.

23. As per the Statement of Account, as of January 5, 2009, Plaintiff had supplied an additional $582.09 in materials to Camp Flooring for use in the Trump Tower Project and such amount remained unpaid as of January 5, 2009.

24. On January 5, 2009, the Defendant executed and submitted a Waiver of Lien to McHugh requesting payment of $154,512.00 and stating that the total amount of the July 23, 2008 Subcontract Agreement, including extras was $1,050,000.00. The January 5, 2009 Waiver of Lien also stated that McCann was due $67,428.90 from this payment and was

only owed a balance of $137,161.40. Attached hereto as *Exhibit J* and incorporated herein is a copy of the January 5, 2009 Waiver of Lien. Camp Flooring received $154,512.00 from McHugh on or about January 5, 2009. McCann only received $35,184.75 from Camp Flooring on January 15, 2009 from the January 5, 2009 Waiver of Lien payment.

25. As per the Statement of Account, Plaintiff supplied Camp Flooring with $28,732.63 in additional materials from January 8, 2009 through September 30, 2009 and such amount remains unpaid. Subsequent to January 15, 2009 and through August 7, 2009, McCann received a total of $185,052.12 in payments from Camp Flooring.

26. Plaintiff does not have any knowledge of any Waivers of Lien having been provided to McHugh by Camp Flooring after January 5, 2009. Plaintiff does not have any knowledge of payments made by McHugh to Camp Flooring after January 5, 2009. Plaintiff did not receive any payments from Camp Flooring after August 7, 2009.

27. As of October 20, 2009, Camp Flooring owed a balance to Plaintiff of $412,851.42. Camp Flooring failed and refused to pay the $412,851.42 balance and Plaintiff filed its Complaint, McCann Industries, Inc. vs. Camp Flooring & Concrete Coatings, Inc. and Robert C. Camp No. 2009 L 1386 ("the DuPage suit") on November 3, 2009. Plaintiff obtained a judgment on November 22, 2010 against Camp Flooring and the Debtor, however, the determination of attorneys' fees was reserved and enforcement of the judgment was stayed. McCann obtained a final and appealable judgment against the Debtor in the amount of $339,025.37 on April 19, 2011. Attached hereto as *Exhibit K* is a copy of the April 19, 2011 Judgment.

**Count I – (11 U.S.C. §523(a)(2)(A))**

28. Plaintiff reasserts and realleges Paragraphs 1-27 as if fully set forth herein as Paragraph 28 of Count I.

29. Prior to the Petition Date, Camp Flooring, at the direction of the Defendant requested that McCann extend it credit for the purchase of materials to be used in the construction of the Trump Tower Project.

30. Prior to the Petition Date, Camp Flooring, at the direction of Defendant, did not pay all amounts due and owing to McCann in accordance with the terms of the Credit Agreement and Camp Flooring was and is in default thereunder.

31. Prior to the Petition Date, Camp Flooring received payments from McHugh for materials provided by Plaintiff and at the direction of the Defendant did not pay the amounts due to Plaintiff for such materials.

32. Prior to the Petition Date, the Defendant did represent to John Schneider, Chief Financial Officer ("CFO") of McCann that Camp Flooring would submit lien waivers and contractor's affidavits to McHugh to obtain payments for the materials supplied by McCann on credit. Prior to the Petition Date, the Defendant did represent to John Schneider, CFO of McCann that McCann would receive payments when Camp Flooring received payment from McHugh.

33. During the time period, September, 2008 through October 20, 2009, the Defendant did represent to John Schneider, CFO of McCann that he personally had spoken with McHugh regarding Camp Flooring's cost overruns on the Trump Tower Project, including the costs of materials supplied by McCann. During the time period September, 2008 through October 20, 2009, the Defendant represented to John Schneider, CFO of

McCann that he had personally spoken with McHugh and that McHugh had agreed to execute change orders to the July 23, 2008 Subcontract Agreement to increase the contract price so that the entire account balance owed to McCann would be paid in full.

34. None of the Waivers of Lien submitted by the Defendant between September 12, 2008 and January 5, 2009 contain any extra amounts added to the original July 23, 2008 Subcontract Agreement.

35. At the time that Defendant made the representations to John Schneider, CFO of McCann, that McCann's obligations would be included as amounts remaining due on the lien waivers, the Defendant knew that the representations were false as he knew that the September 12, 2008 Contractor's Affidavit, the October 13, 2008 Contractor's Affidavit, the October 15, 2008 Contractor's Affidavit, the November 14, 2008 Contractor's Affidavit, and the December 15, 2008 Contractor's Affidavit did not show any amounts owed to McCann for materials supplied. Only the January 5, 2009 Contractor's Affidavit showed a balance due of $137,161.40 to Plaintiff. The September 12, 2008 Contractor's Affidavit, the October 13, 2008 Contractor's Affidavit, the October 15, 2008 Contractor's Affidavit, the November 14, 2008 Contractor's Affidavit, the December 15, 2008 Contractor's Affidavit and the January 5, 2009 Contractor's Affidavit are herein after collectively referred to as the "Contractor's Affidavits".

36. At the time that Defendant made the representations to John Schneider, CFO of McCann that McHugh had agreed to change orders to increase the July 23, 2008 Subcontract Agreement price in order to pay McCann in full, Defendant knew that his representations were false because he knew that (a) pursuant to the July 23, 2008 Subcontract Agreement all change orders had to be in writing and approved prior to the incurring of the extra cost

for materials (b) there were no written change orders approved by McHugh which provided for payment of all of McCann's materials prior to McCann supplying its materials and (c) that McHugh never agreed to approve written change orders which would pay McCann's balance of $412,851.42 in full.

37. The Defendant made the representations regarding the Contractor's Affidavits and change orders to McCann with the intention and purpose of deceiving McCann and inducing McCann to continue to supply materials on credit to Camp Flooring.

38. McCann relied on the reasonable expectations that Defendant would accurately state the amount due McCann in its Contractor's Affidavits and would not falsely state that all material was from fully paid stock or as in the last Contractor's Affidavit that only $67,428.90 was due McCann from the January 5, 2009 payment when $384,118.79 was due as of January 5, 2009.

39. McCann's reliance on the Defendant's representations was reasonable in that Defendant was contractually obligated to provide accurate Contractor's Affidavits to obtain each payment and the Illinois Mechanic's Lien Act provides that Contractor's Affidavits or sworn contractor's statements shall be provided upon request before payment.

40. As a proximate result of the Defendant's representations, McCann continued to extend credit to Camp Flooring and as a result has sustained damages of $394,481.44 arising from unpaid materials supplied to Camp Flooring.

WHEREFORE, the Plaintiff, McCann Industries, Inc. prays this Court for entry of judgment in its favor in the amount of $394,481.44, plus pre-judgment interest and for such other and further relief as is just.

## **Count II - (11 U.S.C. §523(a)(6))**

41. Plaintiff reasserts and realleges Paragraphs 1-40 as if fully set forth herein as Paragraph 41 of Count II.

42. The Defendant knew the terms of the July 23, 2008 Subcontract Agreement required that all change orders be in writing and approved prior to the ordering and accepting of materials from McCann in excess of amounts provided for in the total July 23, 2008 Subcontract Agreement price. The Defendant willfully and maliciously told McCann that McHugh had orally agreed to change orders and that McCann would be paid for all of its materials, knowing that McHugh had not agreed to change orders allowing for payment in full of all amounts owed to McCann and that Camp Flooring did not have the funds available to pay for the McCann materials.

43. The Defendant knew that the Lien Waivers and Contrator's Affidavits submitted to McHugh did not provide for payment in full to McCann when he submitted the Lien Waivers and Contractor's Affidavits. At the direction of the Defendant, Camp Flooring received payments from McHugh pursuant to the Lien Waivers and Contractor's Affidavits and did not pay such funds to McCann.

44. The Defendant knew the amount of funds which had come from McHugh and the amount of funds which were to come from McHugh and still continued to solicit materials from McCann, to use the McCann materials in the Trump Tower Project knowing that Camp Flooring could not and would not pay McCann for its materials.

45. The Defendant's actions in continuing to solicit and accept McCann materials and to use the McCann materials in the Trump Tower Project with no intention of paying McCann

were willful and malicious and were undertaken for the purpose of causing injury to McCann in the amount of $394,481.44.

WHEREFORE, the Plaintiff, McCann Industries, Inc. prays this Court for entry of judgment in its favor in the amount of $394,481.44, plus pre-judgment interest and for such other and further relief as is just.

Respectfully submitted,

*/s/ Elizabeth A. Bates /s/*

Elizabeth A. Bates
Springer Brown, LLC
400 S. County Farm Road
Suite 300
Wheaton, IL 60187
630-510-0000
ebates@springerbrown.com